IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DOMESTIC DRYWALL ANTITRUST LITIGATION | CIVIL ACTION |
| THIS DOCUMENT RELATES TO: | MDL No. 13-2437 |
| Ashton Woods Holdings LLC, et al., <br>     Plaintiffs, <br><br>   v. <br><br> USG Corp., et al., <br>     Defendants. | 15-cv-1712 |

**MEMORANDUM RE: DEFENDANTS' MOTION TO DISMISS HOMEBUILDER PLAINTIFFS' CLAIMS BASED ON 2014 AND 2015 PRICE INCREASES**

**Baylson, J.**                                                                                     June  22   , 2016

**I.     Introduction**

This suit is part of a multi-district litigation (MDL) involving allegations that domestic drywall manufacturers entered agreements to fix prices and eliminate job quotes, a form of price competition. There are currently two separate groups of cases proceeding simultaneously within this MDL. The first group is comprised of plaintiffs who filed class actions as direct or indirect purchasers of drywall (the "Class Actions").[1] The second group is a single case brought by twelve plaintiffs, who are homebuilders (the "Homebuilder Action"). The first group is

---

[1] Early in the litigation, the Court consolidated all indirect and direct purchaser class actions that had been filed across the country. Thus, the first group is in fact many separate cases that the Court is treating in a consolidated fashion for pre-trial purposes.

substantially farther along in the litigation process than the second.[2] Notably, Homebuilder Plaintiffs have access to all of the discovery taken in the Class Actions.

On April 22, 2016, Defendants in the Homebuilder case filed Rule 12(b)(6) Motions asking the Court to dismiss many of Homebuilder Plaintiffs' claims. At this time, the Court is ruling on only two issues: (1) the portions of those Motions asking this Court to dismiss all of the claims based on Defendants' conduct occurring after the price increase that became effective 1/1/2013 and (2) CertainTeed's Individual Motion to Dismiss. For the reasons that follow, the Court will (1) GRANT Defendants' Joint Motion as to Plaintiffs' claims based on activity after the 2013 price increase, which will result in the dismissal of Defendant Continental, and (2) GRANT in part and DENY in part CertainTeed's Individual Motion to Dismiss.

At this time, the Court is not addressing other arguments in Defendants' Motions to Dismiss that are related to *Illinois Brick* or Homebuilder Plaintiffs' state-law claims. The Court will address these issues in a later memorandum.

## II.     Plaintiffs' Allegations Regarding the 2014 and 2015 Price Increases

Homebuilder Plaintiffs allege that Defendants conspired to fix prices and eliminate job quotes beginning in 2011 and continuing to present day. Defendants are domestic drywall manufactures USG Corporation ("USG Corp."), United States Gypsum Company ("USG"), L&W Supply Corporation ("L&W"), New NGC, Inc. ("National"), Lafarge North America, Inc. ("Lafarge"), Continental Building Products, Inc. ("Continental"), CertainTeed Gypsum, Inc. ("CertainTeed"), American Gypsum Company LLC ("American"), TIN, Inc. ("TIN"), and PABCO Building Products LLC ("PABCO").

---

[2]     The Court's Order on the Class Action Defendants' Summary Judgment Motions may be found at *In re Domestic Drywall Antitrust Litig.*, __ F. Supp. 3d __, 2016 WL 684035 (E.D. Pa. Feb. 18, 2016). The parties in the Class Action are now involved in class-action issues.

The 122-page Second Amended Complaint includes detailed allegations of Defendants' communications and activities for the years 2011 and 2012, during which years Homebuilder Plaintiffs allege that Defendants agreed to fix prices for the calendar years 2012 and 2013. ECF 56. This is the same conspiracy period at issue in the Class Action.[3] In contrast, the totality of Homebuilder Plaintiffs' factual allegations related to the allegedly collusive 2014 and 2015 price increases are as follows:

- "Defendants began informing customers of an additional price increase for 2014 in the early months of 2013." Second Am. Compl. ¶ 212.

- Defendant TIN sold some or all of its wallboard business to Georgia-Pacific in July 2013; TIN never disavowed or defeated Defendants' price-fixing conspiracy. *Id.* at ¶ 213.

- Defendant Lafarge sold its drywall business to Defendant Continental on August 30, 2013; Lafarge never disavowed or defeated Defendants' price-fixing conspiracy. *Id.* at ¶ 214.

- Upon purchasing Lafarge's drywall business, Continental had an incentive to step into Lafarge's shoes and continue with the conspiracy. *Id.* at ¶ 215.

- Between April 5, 2013 and September 30, 2013, American, National, CertainTeed, PABCO, and Continental announced that they would raise prices by 20% on all wallboard products, effective January 1, 2014. *Id.* at ¶ 216. On November 15, 2013, USG also announced that it would raise all wallboard prices, effective January 1, 2014. *Id.*

---

[3] The scope of discovery in the Class Actions is January 1, 2010 through January 30, 2013. ECF 75 ¶ 2.

- Defendants' price increases took effect on January 1, 2014 and "were largely successful, even as wallboard demand remained stagnant and excess capacity remained persistent in the market." *Id.* at ¶ 217.

- In 2014, "new residential construction rates remained depressed at roughly half the normal level of production." *Id.* at ¶ 218.

- On May 9, 2014, American announced that it would increase 2015 prices to 15% over 2014 prices. Between September 5, 2014 and October 20, 2014, National, CertainTeed, and Continental announced that they would increase prices by 20% for 2015. *Id.* at ¶ 219.

- Defendants had opportunities to conspire at trade association meetings. *Id.* at ¶ 220.

- "By March 2015, the price for gypsum wallboard skyrocketed as other material costs remained soft. Gypsum prices are now 5.4% higher than their 2006 housing boom peak despite an anemic housing market." *Id.* at ¶ 221.

No other facts are alleged related to the 2014 and 2015 price increases.

### A.     Legal Standard

To survive a Rule 12(b)(6) motion, Homebuilder Plaintiffs' Second Amended Complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires a plaintiff to do more than plead facts that are "merely consistent with a defendant's liability." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In reviewing a complaint for the purpose of a 12(b)(6) motion, a court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994). The Court must also accept all reasonable

inferences that may be drawn from the allegations, viewing facts and inferences in the light most favorable to the non-movant. *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010).

### B. Analysis

Defendants argue that Plaintiffs' allegations fail to state a plausible claim for relief based on the 2014 and 2015 price increases, especially in light of the fact that antitrust suits were initially filed against Defendants beginning in late 2012. The Court agrees. Plaintiffs' factual allegations for the 2014 and 2015 price increases are entirely consistent with innocent behavior, and thus fail to make out "plausible" claims.

Plaintiffs argue that the Court should consider the Second Amended Complaint as a whole and not cabin its consideration to allegations of conduct occurring in 2014 and 2015. Specifically, Plaintiffs urge that because they have plausibly alleged a conspiracy for the 2012 and 2013 increases, it is sufficient for Plaintiffs to allege that the 2014 and 2015 price increases occurred in a manner similar to those in 2012 and 2013.

The Court will accept that Homebuilder Plaintiffs have pleaded sufficient factual allegations to show that Defendants entered a conspiracy to eliminate job quotes and fix prices for the calendar years of 2012 and 2013. This conclusion is buttressed by the fact that, when evaluating Defendants' Motion for Summary Judgment in the Class Action, the Court determined that the record was sufficient for a jury to conclude that the 2012 and 2013 price increases were collusive as to four out of five Defendants. *In re Domestic Drywall Antitrust Litig.*, __ F. Supp. 3d __, 2016 WL 684035, *69 (E.D. Pa. Feb. 18, 2016). However, given that multiple class actions were filed against Defendants prior to any 2014 price increase

5

announcements, it would be unreasonable for the Court to infer, based solely on the facts alleged, that Defendants continued to conspire until present day.

Homebuilder Plaintiffs also argue that "[i]f it is plausible that Defendants held their drywall prices at 30% over already artificially inflated levels for all of 2013, after litigation had commenced, it is equally plausible that Defendants continued their price-fixing conspiracy by agreeing on an additional, unjustifiable price increase for 2014 and 2015." ECF 77 at 24. But this argument overlooks the facts. Homebuilder Plaintiffs allege that, during the *fall* of 2012, Defendants entered agreements to fix prices for the 2013 calendar year. In fact, Plaintiffs' heading about Defendants' agreement to enter the 2013 price increase is entitled, "Defendants' Fall 2012 Collusive Price Increase Announcements." ECF 77. The first antitrust action was filed against Defendants on December 20, 2012.[4] By contrast, multiple class actions had been filed against Defendants before they allegedly agreed to raise prices for 2014 and 2015. To support their allegations of collusive price hikes in 2014 and 2015, Homebuilder Plaintiffs have alleged, in conclusory terms only, that Defendants raised prices, had an incentive to conspire, and had opportunities to conspire. There are no facts alleged. Especially in light of the intervening litigation, these facts are insufficient to set out any plausible claims based on the 2014 and 2015 price increases, even accepting that Plaintiffs' facts are sufficient as to the price increases for 2012 and 2013.

## III.     CertainTeed's Individual Motion to Dismiss

In addition to joining Certain Defendants' Partial Motion to Dismiss for Failure to State a Claim, CertainTeed also brings an individual Motion to Dismiss. ECF 66. In ruling on

---

[4]     *Janicki Drywall, Inc. v. CertainTeed Corp.*, 12-cv-7106 (E.D. Pa. Dec. 20, 2012). The second was filed the following day. *New Deal Lumber & Millwork Co., Inc. v. USG Corp.*, 12-cv-7161 (E.D. Pa. Dec. 21, 2012). These are the only two class actions that were filed before Defendants implemented the 2013 price increase.

Defendants' Motion for Summary Judgment in the Class Actions earlier this year, this Court concluded that the Class Action Plaintiffs had failed to submit sufficient evidence as to CertainTeed. *Drywall Antitrust Litig.*, 2016 WL 684035, at *69. Therefore, CertainTeed was dismissed from the Class Actions. *Id.* at *70. In its individual Motion to Dismiss Homebuilder Plaintiffs' claims, CertainTeed argues that all claims against it should be dismissed because of this Court's prior decision that CertainTeed should be dismissed from the Class Actions.

Although the Court appreciates why CertainTeed filed its individual Motion, CertainTeed's arguments are unavailing at the present time. Homebuilder Plaintiffs have plausibly alleged that CertainTeed participated in a conspiracy to eliminate job quotes and fix the price of drywall in 2012 and 2013. The Court declines CertainTeed's invitation to hold Homebuilder Plaintiffs to a higher pleading standard because of their access to the Class Action Plaintiffs' discovery and because of this Court's prior decision. Homebuilder Plaintiffs are entitled to an opportunity to discover and show facts that the Class Action Plaintiffs may have missed.

That said, the Court will entertain an early Motion for Summary Judgment by CertainTeed. If CertainTeed files such a motion, Homebuilder Plaintiffs should be mindful that they will need to submit evidence in excess of that submitted by the Class Action Plaintiffs to survive it.

**IV.    Conclusion**

The Court will GRANT Defendants' Motions to Dismiss as to all of Plaintiffs' claims to the extent those claims require proof of an agreement to raise prices in 2014 and 2015. Plaintiffs remain free to pursue all of their claims based on conduct occurring before this period. In other words, the function of the Court's ruling is merely to confine the scope of the conspiracy period on which all of Homebuilder Plaintiffs' claims are based, which is the same period as in the

Class Actions.[5] Because all of Plaintiffs' claims against Continental Building Products are based on activity that occurred after the 2013 price increase, Continental Building Products will be dismissed from this litigation.

The Court has determined that these claims should be dismissed with prejudice. Homebuilder Plaintiffs have had two opportunities to amend their complaint as well as access to the discovery completed in the Class Action. Permitting Homebuilder Plaintiffs to amend their complaint yet again would cause undue delay and prove unfair to Defendants. Defendants have already expended resources filing motions to dismiss in response to each of Plaintiffs' three complaints, each of which has raised the argument that Plaintiffs' factual allegations for the post-2013 increase conspiracy period were insufficient. Plaintiffs have thus had two opportunities to amend their complaint to respond to Defendants' argument that their allegations for the 2014 and 2015 increases were insufficient. A third opportunity is not merited under these circumstances.

The Court will rule on the remaining issues presented in Defendants' Motions to Dismiss at a later date. Should the Court grant the motion as to any of Plaintiffs' remaining claims, the Court will revisit whether a dismissal without prejudice is merited for those claims.

An appropriate Order follows.

O:\13-MD-2437 - drywall\15 cv1712 Memo Narrowing Scope 6.16.16.docx

---

[5] The parties should not confuse this window with the possibly different time period for the calculation of damages. It is possible that Homebuilder Plaintiffs, and Class Plaintiffs, may be able to prove damages for a broader time period than the scope of discovery and liability.