# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: DOMESTIC DRYWALL ANTITRUST LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br><br>Ashton Woods Holdings LLC, et al.,<br>    Plaintiffs,<br><br>v.<br><br>USG Corp., et al.,<br>    Defendants. | **CIVIL ACTION**<br><br>**MDL No. 13-2437**<br><br>**15-cv-1712** |

**MEMORANDUM RE: DEFENDANTS' MOTION FOR**
**PARTIAL SUMMARY JUDGMENT ON UNASSIGNED CLAIMS**

Baylson, J.                                                                                     July 15, 2019

## I.    INTRODUCTION

Defendants USG Corporation, United States Gypsum Company, L&W Supply Corporation, and PABCO Building Products LLC (collectively, "Defendants")[1] bring this Motion for Partial Summary Judgment three (3) years after the commencement of this action and five (5) years after the commencement of the overall multidistrict litigation, arguing that six of the twelve Homebuilder Plaintiffs lack standing to bring claims for some or all of their wallboard purchases because they seek damages for purchases made by separately-organized subsidiaries and other related entities. The purchasing entities did not assign the claims at issue to the Homebuilder Plaintiffs, and Defendants argue that the unassigned claims must be dismissed because the Homebuilder Plaintiffs lack Article III standing to bring them. This Court must now determine

---

[1]     The Motion was also brought by former Defendant New NGC, Inc., which was dismissed from this case by Joint Stipulation on July 31, 2018. (ECF 331).

whether genuine disputes of material fact preclude summary judgment for Defendants. For the reasons discussed below, partial summary judgment for Defendants on the unassigned claims is **GRANTED** in part and **DENIED** in part.

## II. BACKGROUND

### A. Procedural History

As the Court has provided a thorough summary of the procedural history in this multidistrict litigation in several prior opinions, the Court includes only the procedural history relevant to the instant Motion. (See, e.g., ECF 390 ("Choice of Law MSJ Opinion") (denying in part Defendants' motion for summary judgment on questions of choice of law)[2]; ECF 351 ("February 2016 MSJ Opinion") (granting in part and denying in part manufacturers' motions for summary judgment in the direct and indirect purchaser actions)[3]; ECF 101 ("Homebuilder MTD Opinion") (granting in part and denying in part Defendants' motion to dismiss Plaintiffs' state law and Sherman Act § 1 claims in the Second Amended Complaint)).[4]

On July 2, 2018, Defendants moved for summary judgment with respect to claims based on wallboard purchases that were (1) made by separately-organized legal entities and not by the named Plaintiffs themselves and (2) not assigned to the named Plaintiffs prior to the filing of this case. (ECF 318, "Motion" or "Mot."). The Motion was accompanied by Defendants' Statement of Undisputed Facts, (ECF 318-2, 324, "SOF"), as well as various exhibits. On July 31, 2018, the

---

[2] The Choice of Law MSJ Opinion is available on the Homebuilder action docket (No. 15-cv-1712) and at In re Domestic Drywall Antitrust Litigation, Nos. 13-md-2437 and 15-cv-1712, 2019 WL 2996484 (E.D. Pa. July 8, 2019) (Baylson J.).
[3] The February 2016 MSJ Opinion is available on the MDL docket (No. 13-md-2437) and at In re Domestic Drywall Antitrust Litigation, 163 F. Supp. 3d 175 (E.D. Pa. 2016) (Baylson, J.).
[4] The Homebuilder MTD Opinion is available on the Homebuilder action docket (No. 15-cv-1712) and at In re Domestic Drywall Antitrust Litigation Civil Action, No. 15-cv-1712, 2016 WL 3769680 (E.D. Pa. July 13, 2016) (Baylson, J.).

2

parties filed a Joint Stipulation, which the Court approved, voluntarily dismissing all claims against Defendant New NGC, Inc. with prejudice, leaving Defendants USG Corporation, United States Gypsum Company, L&W Supply Corporation, and PABCO Building Products LLC (collectively, "Defendants") in the action. (ECF 331).

Plaintiffs responded in opposition to the Motion on August 20, 2018. (ECF 337, "Opposition" or "Opp'n"). The Opposition included a Response to Defendants' Statement of Undisputed Facts, (ECF 337-2, "Resp. to SOF"), as well as Plaintiffs' own Separate Statement of Material Facts, (ECF 337-3, "Pl.'s SOF"), and various exhibits. Defendants replied in support on September 10, 2018, (ECF 349, "Reply"), and included a Response to Plaintiffs' Separate Statement of Material Facts. (ECF 348, "Resp. to Pl.'s SOF"). The Court then held oral argument on the Motion on March 12, 2019. (ECF 378–81).

### B. Undisputed Facts

The following is a fair account of the factual assertions relevant to the instant Motion for Summary Judgment, as taken from both parties' Statements of Fact, and not genuinely disputed.

#### 1. The Legal Entities at Issue

The Third Amended Complaint (ECF 110, "TAC")—the operative complaint in this action—names twelve (12) plaintiffs who bring claims against Defendants related to purchases of wallboard (the "Homebuilder Plaintiffs"). (TAC ¶¶ 31–42). Six of those twelve Homebuilder

Plaintiffs seek damages related in part to wallboard purchases made by their subsidiaries or related entities.[5] The Homebuilder Plaintiffs and related entities at issue in this Motion are as follows:

1. Homebuilder Plaintiff Beazer Homes Holdings Corp. seeks damages for wallboard it purchased, as well as for wallboard purchased by the following three subsidiaries: (a) Beazer Homes Corp.; (b) Beazer Homes Indiana LLP; and (c) Beazer Homes Texas, LP. (SOF ¶¶ 1–2). Homebuilder Plaintiff Beazer Homes Holder Corp. and its subsidiaries build and sell new home communities under the "Beazer Homes" brand name. (Pl.'s SOF ¶ 6; Resp. to Pl.'s SOF ¶ 6).

2. Homebuilder Plaintiff The Drees Company seeks damages for wallboard it purchased, as well as for wallboard purchased by the following four subsidiaries: (a) Ausherman Homes, Inc.; (b) Drees Custom Homes L.P; (c) Drees Homes of Florida, Inc.; and (d) Drees Premier Homes, Inc. (SOF ¶¶ 4–5). Homebuilder Plaintiff The Drees Company and its subsidiaries build and sell new home communities and Homebuilder Plaintiffs contend they do so under the brand name "Drees Homes." (Pl.'s SOF ¶ 12; Resp. to SOF ¶ 12).

3. Homebuilder Plaintiff KB Home seeks damages for wallboard it purchased, as well as for wallboard purchased by the following nine subsidiaries: (a) Fremont Pat Ranch LLC; (b) KB Home Arroyo Vista LLC; (c) KB Home Gold Coast LLC; (d) KB Home Las Vegas Inc.; (e) KB Home Nevada Inc.; (f) KB Home Reno Inc.;

---

[5] There is some disagreement about whether the subsidiaries and related entities are wholly owned, separately-organized, or otherwise related to Homebuilder Plaintiffs. The Court's analysis below applies with equal force to any subsidiaries or related entities that are separately-organized legal entities, as opposed to divisions within each Homebuilder Plaintiff's corporate structure. To the extent the parties continue to disagree about which subsidiaries and related entities named in Defendants' Motion are, in fact, divisions, further briefing may be required.

4.  (g) KB Home/Shaw Louisiana LLC; (h) KB Home South Bay Inc.; and (i) KB Home Treasure Coast LLC. (SOF ¶¶ 7–8).[6] Homebuilder Plaintiff KB Home and some of its subsidiaries build and sell new home communities and Homebuilder Plaintiffs contend they do so under the brand name "KB Home." (Pl.'s SOF ¶ 21; Resp. to Pl.'s SOF ¶ 21).

4.  Homebuilder Plaintiff TRI Pointe Homes, Inc. seeks damages for wallboard purchased by the following seven subsidiaries[7]: (a) Maracay Construction, L.L.C.; (b) Pardee Homes; (c) Pardee Homes of Nevada; (d) The Quadrant Corporation; (e) Trendmaker Homes, Inc.; (f) TRI Pointe Contractors, LP; and (g) Winchester Homes Inc. (SOF ¶¶ 10–11).

5.  Homebuilder Plaintiff Hovnanian Enterprises, Inc. seeks damages for wallboard purchased by the following fifteen subsidiaries: (a) K. Hovnanian Cambridge Homes, L.L.C.; (b) K. Hovnanian Companies of California, Inc.; (c) K. Hovnanian Developments of Arizona, Inc.; (d) K. Hovnanian Developments of Illinois, Inc.; (e) K. Hovnanian Developments of Maryland, Inc.; (f) K. Hovnanian Developments of Minnesota, Inc.; (g) K. Hovnanian Developments of New Jersey II, Inc.; (h) K. Hovnanian Developments of Ohio, Inc.; (i) K. Hovnanian Homes – DFW, L.L.C.; (j) K. Hovnanian Homes of Delaware, L.L.C.; (k) K. Hovnanian

---

[6] In their Separate Statement of Material Facts, Homebuilder Plaintiffs characterize these subsidiaries as "divisions," but Defendants argue in response that they are, in fact, separately incorporated limited liability corporations with separate legal existences. (See Pl.'s SOF ¶ 19; Resp. to Pl's SOF ¶ 19).

[7] Homebuilder Plaintiffs take issue with Defendants' characterization of these subsidiaries as "separately-organized" because Homebuilder Plaintiffs contend these subsidiaries were acquired as part of TRI Pointe Homes, Inc.'s acquisition of Weyerhaueser Real Estate Company in 2014. (See Resp. to SOF ¶ 11; see also Pl.'s SOF ¶ 22; Resp. to Pl.'s SOF ¶ 22).

Homes of North Carolina, Inc. (l) K. Hovnanian Homes of Virginia, Inc.; (m) K. Hovnanian JV Services Company, L.L.C.; (n) K. Hovnanian of Houston II, L.L.C.; and (o) K. Hovnanian Windward Homes, LLC. (Id. ¶¶ 13–14). Some of these subsidiaries build and sell new home communities and Homebuilder Plaintiffs contend they do so under the "K. Hovnanian Homes" brand. (Pl.'s SOF ¶ 16; Resp. to Pl.'s SOF ¶ 16).

6. Homebuilder Plaintiff Toll Brothers, Inc. seeks damages for wallboard it purchased, as well as for wallboard purchased by the following four subsidiaries[8]: (a) Jupiter CC LLC; (b) Plum Canyon Master LLC; (c) Porter Ranch Development Co.; and (d) Shapell Industries, Inc. (SOF ¶¶ 16–17).

### 2. Identifying the Related Entities and the Assignment of Claims

During discovery, Defendants requested that the Homebuilder Plaintiffs identify and produce documents concerning assignments related to their claims. (SOF ¶¶ 35, 37). The six Homebuilder Plaintiffs at issue in this Motion admit that they have not obtained or produced assignments-of-claims from the above-identified subsidiaries, with one exception.[9] (See Resp. to

---

[8] Homebuilder Plaintiffs take issue with Defendants' characterization of these subsidiaries, which Homebuilder Plaintiffs contend ignores the fact that three of the four subsidiaries—Plum Canyon Master LLC, Porter Ranch Development Co., and Shapell Industries, Inc.—were acquired by Toll Brothers, Inc. in 2014. (See Resp. to SOF ¶ 17; see also Pl.'s SOF ¶ 30; Resp. to Pl.'s SOF ¶ 30).

[9] Of the remaining six Homebuilder Plaintiffs named in this suit, three—M/I Homes, Inc., Ashton Woods Holdings L.L.C., D.R. Horton Los Angeles Holding Company, Inc.—have produced assignments-of-claims for their subsidiaries' wallboard purchases. (SOF ¶¶ 21, 24, 27). The other three—Meritage Homes Corporation, Pulte Home Corporation, and CalAtlantic Group, Inc.—seek damages only for their own wallboard purchases or for the purchases of their predecessor entities, and do not assert claims on behalf of any subsidiaries. (Id. ¶¶ 29, 31, 33, 34). The Homebuilder Plaintiffs contest Defendants' characterization of their claims to the extent it intends to limit in any way the damages recoverable by these six Homebuilder Plaintiffs. (Resp. to SOF ¶¶ 23, 26, 29, 31, 33, 34).

SOF ¶¶ 3, 6, 9, 12, 15, 18). The exception is Jupiter CC LLC, which the parties agree did produce an assignment-of-claims to its parent, Toll Brothers, Inc., for the wallboard purchases at issue in the TAC. (SOF ¶ 18; Resp. to SOF ¶ 18).

On February 25, 2018, each of the Homebuilder Plaintiffs produced Amended "Amount of Damages" Contention Statements, which identified the legal entities that made the purchases for which they claim damages.[10] (SOF ¶ 41). At least three of the six Homebuilder Plaintiffs—Beazer Homes Holdings Corp., The Drees Company, and TRI Pointe Homes, Inc.—previously identified the subsidiaries at issue in their Corporate Disclosure Statements and Certifications of Interested Entities or Persons, dated March 17, 2015. (See Pl.'s SOF ¶¶ 3, 9, 25; Resp. to Pl.'s SOF ¶¶ 3, 9, 25). Those Corporate Disclosure Statements stated that each subsidiary at issue purchases drywall indirectly from one or more of the Defendants. (Pl.'s SOF ¶¶ 3, 9, 25; Resp. to Pl.'s SOF ¶¶ 3, 9, 25).[11]

## III. LEGAL STANDARD

A district court should grant a motion for summary judgment if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc.,

---

[10] Homebuilder Plaintiffs admit that they produced these contention statements, but deny that their production was the first time that Homebuilder Plaintiffs comprehensively identified the legal entities that made purchases for which they claim damages. (Resp. to SOF ¶ 41).

[11] Defendants admit that the Corporate Disclosure Statements identified the subsidiaries as such, but deny that they disclosed that the subsidiaries made drywall purchases in 2012–15 for which Homebuilder Plaintiffs are seeking damages in this action. (Resp. to Pl.'s SOF ¶¶ 3, 9, 25). The parties also disagree about the extent to which Defendants sought discovery from the subsidiaries or asked questions about corporate structure and subsidiary purchases during depositions. (Pl.'s SOF ¶¶ 33–38; Resp. to Pl.'s SOF ¶¶ 33–38).

7

477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response must, by "citing to particular parts of materials in the record," set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1)(A); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (The nonmoving party "must do more than simply show that there is some metaphysical dispute as to the material facts"). Summary judgment is appropriate if the adverse party fails to rebut the motion by making a factual showing "sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

IV. DISCUSSION

    A.    The Homebuilder Plaintiffs' Injury in Fact

To have Article III standing to bring a claim, a party must show injury in fact, causation, and redressability. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000). Harm to a related company, even to a wholly-owned subsidiary, does not necessarily constitute injury to a corporate plaintiff. See, e.g., Motorola Mobility LLC v. AU

8

Optronics Corp., 775 F.3d 816, 819–21 (7th Cir. 2015) (Posner, J.) (holding Motorola could not bring Sherman Act claims for purchases made by its subsidiaries and explaining that "derivative injury rarely gives rise to a claim under antitrust law"); cf. In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 341 n.44 (3d Cir. 2010) ("As a matter of well-settled common law, a subsidiary is a distinct legal entity and is not liable for the actions of its parent or sister corporations simply by dint of the corporate relationship").

The Supreme Court has explained that, for purposes of determining their ability to conspire under the Sherman Act, a parent and wholly-owned subsidiary "have a complete unity of interest": common objectives, one corporate consciousness, and the same course of action. Copperweld Corp. v. Indep. Tube Corp., 467 U.S. 752, 771 (1984) ("[T]he coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise."). In Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977), the Court held that indirect purchasers are barred from seeking damages for Sherman Act violations, with limited exceptions. Id. at 735–36. The Third Circuit recognizes those three potential exceptions as: (1) a "cost-plus" exception; (2) a "co-conspirator" exception," and (3) an "owned or controlled" exception. See Howard Hess Dental Labs, Inc. v. Densply Int'l, Inc., 602 F.3d 237, 258–59 (3d Cir. 2010); Merican, Inc. v. Caterpillar Tractor Co., 713 F.2d 958, 968 n.22 (3d Cir. 1983). Homebuilder Plaintiffs thus argue that where an indirect purchaser and direct purchaser act as a single entity, courts grant indirect purchaser standing under the "owned or controlled" exception to Illinois Brick. (Opp'n at 16).

Defendants' Motion is not concerned with whether a parent and subsidiary can conspire for purposes of antitrust liability, nor is it concerned with whether indirect and direct purchasers

9

are acting as a single entity.[12] Rather, Defendants are arguing that Homebuilder Plaintiffs do not have Article III standing to seek damages for wallboard purchases made by their various subsidiaries and related entities, and for which no assignments-of-claims were produced. Aside from their corporate relationships, Homebuilder Plaintiffs have not put forth any evidence to show that they themselves suffered injury as a result of their subsidiaries' and related entities' purchases.

Article III standing and antitrust standing are distinct concepts. See Hartig Drug Co., Inc. v. Senju Pharm. Co., Ltd., 836 F.3d 261, 269 (3d Cir. 2016) ("The two concepts [of Article III standing and antitrust standing] are distinct, with the former implicating the court's subject matter jurisdiction and the latter affecting only the plaintiff's ability to succeed on the merits."); cf. In re Processed Egg Products Antitrust Litig., 881 F.3d 262, 268 (3d Cir. 2018) ("For a party to have 'antitrust standing,' it must do more than satisfy the familiar three-part test for [Article III] standing . . . that arises from the constitutional requirement of a 'case or controversy.'" (citation omitted)). If a plaintiff cannot show that it was injured by the activity that forms the basis for its claim, then the Court need not and should not consider whether that plaintiff can move forward with antitrust claims under Copperweld or Illinois Brick.

Copperweld held only that a parent and subsidiary cannot conspire together under the Sherman Act. The single entity theory propounded by Homebuilder Plaintiffs seeks to extend Copperweld to assume a parent is automatically injured by its subsidiary's purchase of drywall at an illegally inflated cost. This theory is endorsed by only three cases. Those cases rely on each other alone as supporting authority. See Aventis Environmental Science USA LP v. Scotts Co.,

---

[12] The Court noted in its recent Choice of Law MSJ Opinion, and reiterates here, that Homebuilder Plaintiffs have contended throughout this action they are entitled to damages for all wallboard purchases, whether direct or indirect. The Court does not reach any conclusions as to whether Homebuilder Plaintiffs qualify as direct or indirect purchasers in ruling on this Motion.

10

383 F. Supp. 2d 488 (S.D.N.Y. 2005); In re Vitamins Antitrust Litig., No. 99-197TFH, 2001 WL 755852 (D.D.C. June 7, 2001); and Farmland Dairies, Inc. v. New York Farm Bureau, Inc., Nos. 87-CV-1622 (FJS) and 89-CV-567 (FJS), 1996 WL 191971 (N.D.N.Y. Apr. 5, 1996). The Court declines to follow the reasoning in these cases, particularly in light of the many other cases rejecting this single entity theory. See, e.g., In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 341 n.44 (3d Cir. 2010) (rejecting Copperweld as authority for holding subsidiaries liable for actions of a parent); In re Processed Egg Prods. Antitrust Litig., 821 F. Supp. 2d 709, 747 (E.D. Pa. 2011) (Pratter, J.) (rejecting plaintiffs' "attempt to draw a 'single enterprise' theory from Copperweld" and finding that such a theory "is unsupported by legal authority and does not provide occasion to disregard the separate corporate forms of [the] entities and impose liability on them"); Perez v. State Farm Mut. Auto. Ins. Co., No. C 06-01962 LW, 2011 WL 5833636, at *1–3 (N.D. Cal. Nov. 15, 2011); Sun Microsystems, Inc. v. Hynix Semiconductor Inc., 608 F. Supp. 2d 1166, 1185–86 (N.D. Cal. 2009).

The Court likewise finds that the single entity theory should not apply here, particularly because Homebuilder Plaintiffs have failed to articulate a reasonable standard for determining what falls under the definition of a "single entity." Homebuilder Plaintiffs are asking this Court to augment Article III standing to cover separately-organized subsidiaries and related legal entities simply because they engage in the same line of business and because some of them use the same brand name as their corporate parents. We decline to make such a broad determination.

### B.     Substitution under Rule 17

Standing is determined at the time of the commencement of suit. Lujan v. Defenders of Wildlife, 504 U.S. 555, 571 n.5 (1992); 13A Wright & Miller, *Federal Practice and Procedure*, § 3531 (3d ed.) ("Post-filing events that supply standing that did not exist on filing may be

disregarded."). However, Federal Rule of Civil Procedure 17(a)(3) allows reasonable time after an objection for a "real party in interest to ratify, join, or be substituted into the action."

Defendants argue that Rule 17(a)(3) is meant only to ameliorate honest mistakes on the part of a plaintiff and should have no bearing when a plaintiff knew the proper party or could have named the proper party from the beginning with the exercise of minimal diligence. See, e.g., Gardner v. State Farm Fire & Cas. Co., 544 F.3d 553, 563 (3d Cir. 2008); 6A Wright & Miller, *Federal Practice and Procedure*, § 1555 (3d ed.) ("[T]he rule should be applied only to cases in which substitution of the real party in interest is necessary to avoid injustice. Thus, it has been held that when the determination of the right party to bring the action was not difficult and when no excusable mistake had been made, then Rule 17(a)(3) is not applicable and the action should be dismissed.").

The Court does not read these authorities as prescribing an absolute bar to post-complaint addition, substitution, or ratification, especially where, as here, Defendants had ample time to voice an objection to the named plaintiffs. Homebuilder Plaintiffs contend that they "were clear from the start that they were asserting antitrust claims based on their own purchases of drywall as well as purchases made by/through their wholly-owned subsidiaries." (Opp'n at 21). Homebuilder Plaintiffs assert they previously put Defendants on notice of the identities of their subsidiaries that purchased drywall that might be related to their overall claims. Considering the stage of this case and the extensive discovery that has gone on, the Court will afford the Homebuilder Plaintiffs a fair opportunity to substitute or add the correct parties as Plaintiffs, or otherwise have them ratify.

V.  **CONCLUSION**

For the reasons stated above, the Motion for Partial Summary Judgment on Unassigned Claims (ECF 318) is **GRANTED** in part and **DENIED** in part. Although the Court agrees that

the Homebuilder Plaintiffs do not have automatic Article III standing to bring claims on behalf of their subsidiaries, the Court will give the Homebuilder Plaintiffs reasonable time to add or substitute previously identified subsidiaries or affiliates as the correct parties as Plaintiffs to this action, or to allow them to ratify, pursuant to Rule 17(a)(3).

      An appropriate Order follows.

O:\13-MD-2437 - drywall\15cv1712 memo re unassigned claims